T.C. Memo. 2018-27

UNITED STATES TAX COURT

RJ CHANNELS, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25151-15, 11955-16,           Filed March 14, 2018.
11957-16.

Walter D. Channels, for petitioners.

Mindy S. Meigs, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge: Respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a)[2] on, the Federal income tax (tax) of each petitioner for the taxable year indicated, as follows:

---

[1]Cases of the following petitioners are consolidated herewith: Channels & Channels, Inc., docket No. 11955-16; and RJ Channels, Inc., docket No. 11957-16.

[2]All section references are to the Internal Revenue Code in effect for the taxable years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]

| Petitioner | Taxable Year Ended | Deficiency | Accuracy-Related Penalty Under Sec. 6662(a) |
|---|---|---|---|
| RJ Channels, Inc. | 5/31/2012 | $234,940 | $46,988.00 |
| Channels & Channels, Inc. | 12/31/2012 | 215,081 | 43,015.60 |
| RJ Channels, Inc. | 5/31/2013 | 136,151 | 27,230.20 |

The issues remaining for decision are:

(1) Are certain amounts of client fees that RJ Channels, Inc., received during each of its taxable years that ended on May 31, 2012 and 2013, includible in its gross income for the taxable year in which it received those fees? We hold that they are.

(2) Is RJ Channels, Inc., entitled to deduct for its taxable year that ended on May 31, 2012, certain expenses paid on behalf of certain of its clients? We hold that it is not.

(3) Is RJ Channels, Inc., entitled to deduct for its taxable year that ended on May 31, 2013, a certain amount with respect to a claimed contingent liability? We hold that it is not.

(4) Is RJ Channels, Inc., entitled for each of its taxable years that ended on May 31, 2012 and 2013, to certain claimed miscellaneous deductions in excess of those that respondent allowed? We hold that it is not.

**[*3]** (5) Is RJ Channels, Inc., liable for each of its taxable years that ended on May 31, 2012 and 2013, for the accuracy-related penalty under section 6662(a)? Pursuant to the stipulations of the parties, it is liable for those penalties.

(6) Is Channels & Channels, Inc., entitled to deduct for its taxable year 2012 certain expenses paid on behalf of certain of its clients? We hold that it is not.

(7) Is Channels & Channels, Inc., entitled for its taxable year 2012 to certain claimed miscellaneous deductions in excess of those that respondent allowed? We hold that it is not.

(8) Is Channels & Channels, Inc., liable for its taxable year 2012 for the accuracy-related penalty under section 6662(a)? Pursuant to the stipulations of the parties, it is liable for that penalty.

## FINDINGS OF FACT[3]

Some of the facts have been stipulated and are so found.

The principal office of petitioner, RJ Channels, Inc. (RJC), was in California at the time it filed the respective petitions in the cases at docket Nos. 25151-15

---

[3]Unless otherwise indicated, our findings of fact as they relate to petitioner, RJ Channels, Inc., pertain to its taxable years ended on May 31, 2012 and 2013 (TYE 5/31/12 and TYE 5/31/13, respectively), the taxable years at issue in the cases at docket Nos. 25151-15 and 11957-16 (sometimes, RJC's cases), and our findings of fact as they relate to petitioner, Channels & Channels, Inc., pertain to the taxable year 2012, the taxable year at issue in the case at docket No. 11955-16 (sometimes, C&C's case).

**[\*4]** and 11957-16.  The principal office of petitioner, Channels & Channels, Inc.

(C&C), was in California at the time it filed the petition in the case at docket No.

11955-16.

RJC

Background

RJC, which was taxed as a subchapter C corporation, maintained its books

and records and filed its tax returns using the accrual method of accounting and

used a fiscal year and a taxable year ending on May 31.  Ronald J. Channels (Mr.

Channels), an enrolled agent and return preparer, owned 100 percent of RJC and

was an officer of that company.  RJC was engaged in the business of providing tax

services, primarily return preparation services.  It maintained certain accounts at

various banks, including a checking account at Wells Fargo Bank (RJC's Wells

Fargo account).

Certain Client Fees Received by RJC

Eric Betzler (Mr. Betzler) retained RJC in February 2012 to provide certain

Federal tax services to his wife, Cynthia Betzler (Ms. Betzler), and him (RJC's

Betzler tax services).[4]  On February 29, 2012, Mr. Betzler gave Mr. Channels a

---

[4]We shall sometimes refer collectively to Mr. Betzler and Ms. Betzler as the Betzlers.

[*5] check for $150,000 (TYE 5/31/12 Betzler fees) as payment for RJC's Betzler tax services, which was promptly deposited into RJC's Wells Fargo account. Mr. Channels, on behalf of RJC, informed Mr. Betzler that if RJC were unable to obtain a favorable result for them as a result of RJC's Betzler tax services, RJC would repay to the Betzlers the TYE 5/31/12 Betzler fees that it had received from them. RJC's return of the TYE 5/31/12 Betzler fees that it had received was thus subject to a condition subsequent.

At no time did the Betzlers place any restrictions on RJC's use of the TYE 5/31/12 Betzler fees that they had paid to it. RJC issued checks and/or withdrew moneys from RJC's Wells Fargo account whenever it deemed it appropriate to do so. RJC did not return to the Betzlers the TYE 5/31/12 Betzler fees.

Mr. Betzler died on July 24, 2012. Around September 7, 2012, Ms. Betzler, who wanted RJC to continue to provide to her RJC's Betzler tax services, gave Mr. Channels a check for $153,600 (TYE 5/31/13 Betzler fees) as an additional payment for those services, which was promptly deposited into RJC's Wells Fargo account. Mr. Channels, on behalf of RJC, informed Ms. Betzler that if RJC were unable to obtain a favorable result for her as a result of the RJC Betzler tax services, RJC would repay to her not only the TYE 5/31/12 Betzler fees but also the TYE 5/31/13 Betzler fees (sometimes collectively, RJC's total Betzler fees)

[*6] that it had received from them. RJC's return of the TYE 5/31/13 Betzler fees that it had received was thus subject to a condition subsequent.

At no time did Ms. Betzler place any restrictions on RJC's use of the TYE 5/31/13 Betzler fees that she had paid to it. RJC did not return to Ms. Betzler the TYE 5/31/13 Betzler fees.

Caren Wyatt (Ms. Wyatt) retained RJC around April 2012 to provide certain Federal tax services to her (RJC's Wyatt tax services). On April 12, 2012, Ms. Wyatt gave Mr. Channels a check for $65,000 (TYE 5/31/12 Wyatt fees) as payment for RJC's Wyatt tax services, which was promptly deposited into RJC's Wells Fargo account. Mr. Channels, on behalf of RJC, informed Ms. Wyatt that if RJC were unable to obtain a favorable result for her as a result of RJC's Wyatt tax services, RJC would repay to her the TYE 5/31/12 Wyatt fees that it had received from her. RJC's return of the TYE 5/31/12 Wyatt fees that it had received was thus subject to a condition subsequent.

At no time did Ms. Wyatt place any restrictions on RJC's use of the TYE 5/31/12 Wyatt fees that she had paid to it. RJC did not return to Ms. Wyatt the TYE 5/31/12 Wyatt fees.

As of the close of RJC's TYE 5/31/13, RJC's Wells Fargo account showed a negative balance.

**[\*7]**  Payment of Certain Client Expenses

During its TYE 5/31/12, RJC paid on behalf of certain of its clients certain obligations of those clients (1) for "Legal and Professional Fees" totaling $775 and (2) for "Taxes" totaling $1,750.46 (collectively, TYE 5/31/12 client expenses paid by RJC).  At times not established by the record after RJC paid those client expenses, RJC's clients whose respective expenses it had paid on their behalf reimbursed RJC for those expenses.

During RJC's TYE 5/31/12, Mr. Channels paid on behalf of certain of RJC's clients certain obligations of those clients for "Legal and Professional Fees" totaling $2,900.11 (TYE 5/31/12 client expenses paid by Mr. Channels).  At times not established by the record after Mr. Channels paid those client expenses, RJC's clients whose respective expenses Mr. Channels had paid on their behalf reimbursed those expenses.[5]

RJC's Claimed Contingent Liability

On December 31, 2012, Denise Bogard (Ms. Bogard) commenced a lawsuit (Bogard lawsuit) against various defendants, including an organization known as Channels & Barth, LLP (C&B), and Mr. Channels, both in his individual capacity

---

[5]The record does not establish whether RJC's clients reimbursed RJC or Mr. Channels for certain expenses of certain of RJC's clients that Mr. Channels paid during RJC's TYE 5/31/12.

[*8] and as an executive of C&B. RJC was not named as a defendant in the Bogard lawsuit.

RJC's Tax Returns

In Form 1120, U.S. Corporation Income Tax Return (Form 1120), that RJC filed for its TYE 5/31/12 (TYE 5/31/12 return), RJC reported $447,570 in "Gross receipts". In that return, RJC claimed the following "Other deductions", which included deductions totaling $5,425.11[6] for "Taxes for clients" and "Legal and professional" claimed for the TYE 5/31/12 client expenses paid by RJC and the TYE 5/31/12 client expenses paid by Mr. Channels:[7]

---

[6]In its TYE 5/31/12 return, RJC rounded to the nearest dollar each of the "Other deductions" that it claimed.

[7]We shall refer collectively to the deductions that RJC claimed in its TYE 5/31/12 return for the TYE 5/31/12 client expenses paid by RJC and the TYE 5/31/12 client expenses paid by Mr. Channels as the total TYE 5/31/12 claimed client expense deductions.

[*9]

| Claimed "Other deductions" | Amount |
|---|---|
| Utilities | $500 |
| Travel | 13,340 |
| Telephone | 4,554 |
| Taxes for clients | 1,750 |
| Software | 3,160 |
| Professional development | 200 |
| Printing | 258 |
| Postage | 2,481 |
| Parking and tolls | 163 |
| Outside services | 5,133 |
| Other expenses | 3,687 |
| Office expense | 8,027 |
| Medical expense | 8,800 |
| Meals and entertainment | 5,557 |
| Legal and professional | 3,675 |
| Internet connections | 1,741 |
| Insurance | 10,457 |
| Gifts | 1,064 |
| Dues and subscriptions | 2,435 |
| Contract labor | 208,116 |
| Continuing education | 4,797 |
| Computer services | 28,710 |
| Bank charges | 4,848 |
| Auto and truck | 22,469 |
| Total | 345,922 |

[*10] In the return that RJC filed for its TYE 5/31/13 (TYE 5/31/13 return), RJC reported $146,412 in "Gross receipts".  In that return, RJC claimed the following "Other deductions", which included a deduction for $325,000 that RJC claimed as a contingent liability with respect to the Bogard lawsuit (claimed $325,000 Bogard lawsuit deduction):

| Claimed "Other deductions" | Amount |
| --- | --- |
| Utilities | $3,680 |
| Telephone | 454 |
| Security | 6,289 |
| Parking and tolls | 30 |
| Outside services | 4,665 |
| Other expenses | 87 |
| Office expense | 469 |
| Medical expense | 7,011 |
| Meals and entertainment | 1,512 |
| Internet connections | 1,194 |
| Insurance | 4,893 |
| Dues and subscriptions | 2,486 |
| Contract labor | 9,226 |
| Continuing education | 576 |
| Contingent liability--Bogard lawsuit | 325,000 |
| Bank charges | 41 |
| Auto and truck | 8,164 |
| Total | 375,777 |

**[*11]** RJC Notices of Deficiency

Respondent issued a notice of deficiency (notice) to RJC for its TYE 5/31/12 (TYE 5/31/12 notice). In that notice, respondent determined, inter alia, to include in RJC's gross income the TYE 5/31/12 Betzler fees and the TYE 5/31/12 Wyatt fees. In the TYE 5/31/12 notice, respondent also determined to disallow the entire amount (i.e., $345,922) of the claimed "Other deductions".[8] Respondent

_____

[8]As a result of certain concessions, only the following deductions included in "Other deductions" that respondent disallowed remain at issue for RJC's TYE 5/31/12 which include the total TYE 5/31/12 claimed client expense deductions for "Taxes for clients" and "Legal and professional":

| Claimed "Other deductions" | Amount |
| --- | --- |
| Telephone | $1,291.40 |
| Taxes for clients | 1,750.00 |
| Software | 3,160.00 |
| Legal and professional | 3,675.00 |
| Insurance | 3,477.00 |
| Dues and subscriptions | 2,181.17 |
| Contract labor | 3,562.05 |
| Computer services | 28,710.00 |
| Bank charges | 894.40 |
| Total | 48,701.02 |

There appear to be discrepancies between certain amounts of certain "Other

(continued...)

[*12] further determined in the TYE 5/31/12 notice that RJC is liable for the accuracy-related penalty under section 6662(a).[9]

Respondent issued a notice to RJC for its TYE 5/31/13 (TYE 5/31/13 notice). In that notice, respondent determined, inter alia, to include in RJC's gross income the TYE 5/31/13 Betzler fees. In the TYE 5/31/13 notice, respondent also determined to disallow the entire amount (i.e., $375,777) of the claimed "Other

---

[8](...continued)
deductions" that remain at issue for RJC's TYE 5/31/12 and the respective amounts of such "Other deductions" that respondent asserts on brief remain at issue for that year. We expect the parties to reconcile any such discrepancies as part of the respective computations under Rule 155 that will be required in these cases (Rule 155 computations). (We shall refer to the deductions that RJC included in "Other deductions" for its TYE 5/31/12 that respondent disallowed, and that remain at issue for its TYE 5/31/12 except for the total TYE 5/31/12 claimed client expense deductions, as the TYE 5/31/12 claimed miscellaneous deductions at issue or the TYE 5/31/12 deductions at issue claimed for certain miscellaneous expenses.)

[9]The parties agree that RJC would be liable for its TYE 5/31/12 for the accuracy-related penalty under sec. 6662(a) in the event there is a deficiency for that year.

**[\*13]** deductions".[10]  Respondent further determined in the TYE 5/31/13 notice

that RJC is liable for the accuracy-related penalty under section 6662(a).[11]

C&C

    Background

    C&C, which was taxed as a subchapter C corporation, maintained its books

and records and filed its tax returns using the accrual method of accounting and

used a calendar fiscal year and a calendar taxable year.  Mr. Channels and his

---

[10]As a result of certain concessions, only the following deductions included in "Other deductions" that respondent disallowed remain at issue for RJC's TYE 5/31/13 which include the claimed $325,000 Bogard lawsuit deduction:

| Claimed "Other deductions" | Amount |
| --- | --- |
| Insurance | $3,477 |
| Dues and subscriptions | 836 |
| Contingent liability--Bogard lawsuit | 325,000 |
| Total | 329,313 |

(We shall refer to the deductions that RJC included in "Other deductions" for its TYE 5/31/13 that respondent disallowed, and that remain at issue for its TYE 5/31/13 except for the claimed $325,000 Bogard lawsuit deduction, as the TYE 5/31/13 claimed miscellaneous deductions at issue or the TYE 5/31/13 deductions at issue claimed for certain miscellaneous expenses.)

[11]The parties agree that RJC would be liable for its TYE 5/31/13 for the accuracy-related penalty under sec. 6662(a) in the event there is a deficiency for that year.

[*14] daughter, Susan Gyor, a.k.a. Susan Channels (Ms. Gyor), who is a certified public accountant, each owned 50 percent of C&C.  Ms. Gyor was secretary of C&C, and Mr. Channels held the remaining offices of that company.  C&C was engaged in the business of providing tax services, primarily return preparation services.

### Payment of Certain Client Expenses

During 2012, C&C paid on behalf of certain of its clients certain obligations of those clients for "Clients' Obligations" totaling $3,138.64 (2012 client expenses paid by C&C).  At times not established by the record after C&C paid those client expenses, C&C's clients whose respective expenses it had paid on their behalf reimbursed C&C for those expenses.

During 2012, Ms. Gyor paid on behalf of certain of C&C's clients certain obligations of those clients for "Clients' Obligations" totaling $737 (2012 client expenses paid by Ms. Gyor).  At times not established by the record after Ms. Gyor paid those client expenses, C&C's clients whose respective expenses Ms. Gyor had paid on their behalf reimbursed those expenses.[12]

---

[12]The record does not establish whether C&C's clients reimbursed C&C or Ms. Gyor for certain expenses of certain of C&C's clients that Ms. Gyor paid during C&C's taxable year 2012.

**[*15]** <u>C&C's Tax Return</u>

In Form 1120 that C&C filed for its taxable year 2012 (2012 return), C&C claimed the following "Other deductions", which included deductions totaling $3,898[13] comprising (1) "Client obligations paid" claimed for the 2012 client expenses paid by C&C and the 2012 client expenses paid by Ms. Gyor, which totaled $3,875.64, and (2) $22 paid by C&C to Ms. Gyor:[14]

---

[13]In C&C's 2012 return, C&C rounded to the nearest dollar each of the "Other deductions" that it claimed.

[14]We shall refer collectively to the deductions that C&C claimed in C&C's 2012 return for (1) the 2012 client expenses paid by C&C and the 2012 client expenses paid by Ms. Gyor, which totaled $3,875.64, and (2) the $22 paid by C&C to Ms. Gyor as the 2012 claimed client expense deductions.

[*16]

| Claimed "Other deductions" | Amount |
|---|---|
| Utilities | 328 |
| Travel | 4,843 |
| Telephone | 4,107 |
| Security | 780 |
| Printing | 1,023 |
| Postage | 2,609 |
| Parking and tolls | 104 |
| Office expense | 3,514 |
| Miscellaneous | 1,793 |
| Medical expenses | 1,092 |
| Meals and entertainment | 3,921 |
| Legal and professional | 785 |
| Insurance | 4,576 |
| Gifts | 414 |
| Dues and subscriptions | 2,067 |
| Contract labor | 225,931 |
| Continuing education | 5,009 |
| Computer & internet expenses | 11,101 |
| Client obligations paid | 3,898 |
| Bonuses | 3,887 |
| Bank charges | 2,705 |
| Auto and truck | 3,415 |
| Amortization | 67 |
| Accrued payroll | 72,000 |
| Total | 359,969 |

**[*17]** C&C Notice of Deficiency

Respondent issued a notice to C&C for its taxable year 2012 (2012 notice).

In that notice, respondent determined, inter alia, to disallow the entire amount (i.e.,

$359,969) of the claimed "Other deductions".[15]  In the 2012 notice, respondent

also determined that C&C is liable for the accuracy-related penalty under section

6662(a).[16]

---

[15]As a result of certain concessions, only the following deductions included
in "Other deductions" that respondent disallowed remain at issue for C&C's
taxable year 2012, which include the 2012 claimed client expense deductions for
"Client obligations paid":

| Claimed "Other deductions" | Amount |
|---|---|
| Insurance | $2,105.58 |
| Dues and subscriptions | 2,022.02 |
| Continuing education | 2,956.52 |
| Client obligations paid | 3,897.64 |
| Bank charges | 1,510.74 |
| Total | 12,492.50 |

(We shall refer to the deductions that C&C included in "Other deductions" for its
taxable year 2012, that respondent disallowed, and that remain at issue for its
taxable year 2012, except for the 2012 claimed client expense deductions, as 2012
claimed miscellaneous deductions at issue or 2012 deductions at issue claimed for
certain miscellaneous expenses.)

[16]The parties agree that C&C would be liable for its taxable year 2012 for

(continued...)

**[\*18]**                                        OPINION

RJC has the burden of establishing that respondent's respective determinations in the TYE 5/31/12 notice and the TYE 5/31/13 notice that remain at issue in the respective cases at docket Nos. 25151-15 and 11957-16 are in error.  C&C has the burden of establishing that respondent's determinations in the 2012 notice that remain at issue in the case at docket No. 11955-16 are in error.[17]  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Before addressing the issues presented, we shall evaluate the testimony of Mr. Channels, the only witness at the trial in these cases.  We found Mr. Channels' testimony to be at times evasive and in certain material respects general, conclusory, and/or vague.  We are not required to, and we shall not, rely on any such testimony of Mr. Channels to establish the respective positions of RJC and C&C with respect to the issues remaining in their respective cases.  See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We also found Mr. Channels' testimony

---

[16](...continued)
the accuracy-related penalty under sec. 6662(a) in the event there is a deficiency for that year.

[17]RJC and C&C, as petitioners in these consolidated cases, properly filed one simultaneous opening brief and one simultaneous reply brief.  Nonetheless, we shall refer to RJC when we are addressing the issues presented in RJC's cases and to C&C when we are addressing the issues in C&C's case.

**[\*19]** to be in certain material respects not helpful to the respective positions of RJC and C&C with respect to certain issues. In fact, certain of Mr. Channels' testimony supports respondent's position with respect to certain issues.

RJC

Certain Client Fees Received by RJC

We begin by setting forth our understanding of what we are not being asked to decide. We are not being asked to decide <u>whether</u> (1) the TYE 5/31/12 Betzler fees and the TYE 5/31/12 Wyatt fees that RJC received during its TYE 5/31/12 and (2) the TYE 5/31/13 Betzler fees that it received during its TYE 5/31/13[18] constitute income.[19] We are being asked to decide <u>when</u> those fees are includible

---

[18]We shall sometimes refer collectively to the TYE 5/31/12 Betzler fees and the TYE 5/31/12 Wyatt fees that RJC received during its TYE 5/31/12 and (2) the TYE 5/31/13 fees that it received during its TYE 5/31/13 as the client fees in question.

[19]Counsel of record for petitioners indicated at trial that the issue involving the TYE 5/31/12 Betzler fees, the TYE 5/31/12 Wyatt fees, and the TYE 5/31/13 Betzler fees was a "prepaid income" issue. On brief, RJC seems to suggest that the issue involving those fees is not a "prepaid income" issue but is <u>whether</u> they constitute income. On the record before us, we reject any such contention. The record establishes, and we have found, that RJC received (1) the TYE 5/31/12 Betzler fees and the TYE 5/31/13 Betzler fees as payment for RJC's Betzler tax services and (2) the TYE 5/31/12 Wyatt fees as payment for RJC's Wyatt tax services. On that record, we find that those fees constitute income. <u>See</u> sec. 61(a)(1). We proceed now to consider the issue of <u>when</u> those fees are includible in RJC's gross income.

[*20] in RJC's gross income.  That is to say, we must decide whether the client

fees in question are includible in RJC's gross income for some taxable year after

the taxable year of receipt by RJC, as RJC maintains, or for the taxable year of

receipt, as respondent maintains.

We start our consideration of when the client fees in question are includible

in RJC's gross income by summarizing certain apposite authorities.  Pursuant to

section 1.446-1(c)(1)(ii), Income Tax Regs., a taxpayer on the accrual method of

accounting[20] is required to include income for the taxable year when (1) all the

events have occurred that fix the right to the income and (2) the amount of income

can be determined with reasonable certainty.

Under the all events test, it is the fixed right of a taxpayer on the accrual

method of accounting to receive the income that is controlling, not whether there

has been actual receipt thereof.  Spring City Foundry Co. v. Commissioner, 292

U.S. 182, 184-185 (1934).  In Charles Schwab Corp. & Subs. v. Commissioner,

107 T.C. 282, 293 (1996), aff'd, 161 F.3d 1231 (9th Cir. 1998), we observed that

"[i]n applying the all events test, this and other courts have distinguished between

conditions precedent, which must occur before the right to income arises, and

---

[20]RJC maintained its books and records and filed its tax returns using the
accrual method of accounting.

**[*21]** conditions subsequent, the occurrence of which will terminate an existing right to income, but the presence of which does not preclude accrual of income."

The right of a taxpayer on the accrual method of accounting to receive income is fixed upon the earliest of (1) the taxpayer's receipt of payment, (2) the contractual due date of the payment, or (3) the taxpayer's performance. See Schlude v. Commissioner, 372 U.S. 128, 133, 137 (1963); Charles Schwab Corp. & Subs. v. Commissioner, 107 T.C. at 292; Cox v. Commissioner, 43 T.C. 448, 455-456 (1965).

Where a taxpayer receives money under a claim of right and without restriction or limitation as to the disposition of the money, the taxpayer must include the money in gross income for the year in which the taxpayer receives it, even though the taxpayer may not be entitled to retain the money and even though the taxpayer may be liable to return its equivalent. See N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932).

In advancing its position on brief, RJC fails to discuss some of the apposite authorities discussed above and/or misconstrues and/or misapplies some of those authorities or other authorities that it cites. Equally troublesome is that, in advancing its position that the client fees in question are not includible in income

**[\*22]** upon receipt, RJC relies principally on <u>Commissioner v. Indianapolis Power & Light Co.</u>, 493 U.S. 203 (1990), and certain other cases that, as we explain below, we find to be inapposite to resolving when the client fees in question are includible in RJC's gross income.[21]

The Supreme Court of the United States (Supreme Court) began its opinion in <u>Indianapolis Power</u> by pointing out that the taxpayer involved there had acknowledged that the customer deposits in question in that case would be taxable upon receipt if that Court were to hold that they constituted advance payments for electricity. See <u>id.</u> at 207. The Supreme Court also pointed out in <u>Indianapolis Power</u> that it had previously "held that an accrual-basis taxpayer is required to treat advance payments as income in the year of receipt. See <u>Schlude v. Commissioner</u>, 372 U. S. 128 (1963); <u>American Automobile Assn. v. United States</u>, 367 U. S. 687 (1961); <u>Automobile Club of Michigan v. Commissioner</u>, 353 U. S. 180

---

[21]For example, RJC relies on <u>Milenbach v. Commissioner</u>, 106 T.C. 184 (1996), <u>aff'd in part, rev'd in part on other grounds</u>, 318 F.3d 924 (9th Cir. 2003), which held, inter alia, that a certain amount received by the Los Angeles Raiders in 1984 constituted income, not a loan. See <u>id.</u> at 197. As discussed below, we find in our Opinion <u>Milenbach</u> and in the opinions in certain other cases on which RJC relies to be inapposite. Moreover, RJC fails to point out that the U.S. Court of Appeals for the Ninth Circuit, the court to which an appeal in these cases would normally lie, reversed this Court on the issue of whether a certain amount received by the Los Angeles Raiders in 1984 constituted income, not a loan. See <u>Milenbach v. Commissioner</u>, 318 F.3d at 930-931.

**[\*23]** (1957)." Id. n.3.  It then observed:  "These cases concerned payments-- nonrefundable fees for services--that indisputably constituted income; the issue was when that income was taxable.  Here, in contrast, the issue is whether these deposits, as such, are income at all."  Id.

We find RJC's reliance on Indianapolis Power, Milenbach v. Commission- er, 106 T.C. 184, and any other case where the issue was whether certain payments are "income at all" to be misplaced because those authorities are inapposite to the issue here involving the client fees in question.  See Alexander Shokai, Inc. v. Commissioner, T.C. Memo. 1992-41, 63 T.C.M. (CCH) 1870, 1881 (1992), aff'd, 34 F.3d 1480 (9th Cir. 1994).

Under the authorities that we conclude are apposite to resolving the issue involving the client fees in question and that we summarized at the beginning of our discussion of this issue, we find on the record before us that RJC is required to include those fees in its gross income for the taxable year of receipt.  The record establishes, and we have found, the following facts that require our so finding under those authorities.  During RJC's TYE 5/31/12, Mr. Betzler retained RJC to provide RJC's Betzler tax services for him and Ms. Betzler.  During that taxable year, Mr. Betzler gave Mr. Channels a check for $150,000 (i.e., the TYE 5/31/12

[*24] Betzler fees) as payment for RJC's Betzler tax services, which was promptly deposited into RJC's Wells Fargo account.  Mr. Channels, on behalf of RJC, informed Mr. Betzler that if RJC were unable to obtain a favorable result for them as a result of RJC's Betzler tax services, RJC would repay to the Betzlers the TYE 5/31/12 Betzler fees that it had received from them.  RJC's return of the TYE 5/31/12 Betzler fees that it had received was thus subject to a condition subsequent.

At no time did the Betzlers place any restrictions on RJC's use of the TYE 5/31/12 Betzler fees that they had paid to it.  RJC issued checks and/or withdrew moneys from RJC's Wells Fargo account whenever it deemed it appropriate to do so.  RJC did not return to the Betzlers the TYE 5/31/12 Betzler fees.

During RJC's TYE 5/31/12, Ms. Wyatt retained RJC to provide RJC's Wyatt tax services.  During that taxable year, Ms. Wyatt gave Mr. Channels a check for $65,000 (i.e., the TYE 5/31/12 Wyatt fees) as payment for RJC's Wyatt tax services, which was promptly deposited into RJC's Wells Fargo account.  Mr. Channels, on behalf of RJC, informed Ms. Wyatt that if RJC were unable to obtain a favorable result for her as a result of RJC's Wyatt tax services, RJC would repay to her the TYE 5/31/12 Wyatt fees that it had received from her.  RJC's return of

[*25] the TYE 5/31/12 Wyatt fees that it had received was thus subject to a condition subsequent.

At no time did Ms. Wyatt place any restrictions on RJC's use of the TYE 5/31/12 Wyatt fees that she had paid to it. RJC did not return to Ms. Wyatt the TYE 5/31/12 Wyatt fees.

Mr. Betzler died on July 24, 2012. Around September 7, 2012, Ms. Betzler, who wanted RJC to continue to provide to her RJC's Betzler tax services, gave Mr. Channels a check for $153,600 (i.e., the TYE 5/31/13 Betzler fees) as an additional payment for those services, which was promptly deposited into RJC's Wells Fargo account. Mr. Channels, on behalf of RJC, informed Ms. Betzler that if RJC were unable to obtain a favorable result for her as a result of the RJC Betzler tax services, RJC would repay to her RJC's total Betzler fees (i.e., the TYE 5/31/12 Betzler fees and the TYE 5/31/13 Betzler fees) that it received from them in its TYE 5/31/12 and its TYE 5/31/13, respectively. RJC's return of the TYE 5/31/13 Betzler fees that it had received was thus subject to a condition subsequent.

At no time did Ms. Betzler place any restrictions on RJC's use of the TYE 5/31/13 Betzler fees that she had paid to it. RJC did not return to Ms. Betzler the TYE 5/31/13 Betzler fees.

[*26] As of the close of RJC's TYE 5/31/13, RJC's Wells Fargo account showed a negative balance.

On the record before us, we find that RJC is required to include in its gross income (1) for its TYE 5/31/12 the TYE 5/31/12 Betzler fees of $150,000 and the TYE 5/31/12 Wyatt fees of $65,000, or a total of $215,000, that it received during that taxable year and (2) for its TYE 5/31/13 the TYE 5/31/13 Betzler fees of $153,600 that it received during that taxable year.

Claimed Deductions That Remain at Issue

Before turning to the deductions that RJC claimed for each of its TYE 5/31/12 and its TYE 5/31/13, that respondent disallowed, and that remain at issue, we shall briefly summarize certain applicable authorities. Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Moreover, a taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In addition, for certain kinds of expenses that are otherwise deductible

[*27] under section 162(a), such as those for "listed property", as defined in section 280F(d)(4), a taxpayer must satisfy certain additional substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions.

Section 170(a) allows a deduction for any charitable contribution, as defined in section 170(c), payment of which is made within the taxable year in question. Section 170(a) further provides that a deduction will be allowed for a charitable contribution "only if verified under regulations prescribed by the Secretary."

Total TYE 5/31/12 Claimed Client Expense Deductions

We consider now whether RJC is entitled to deduct under section 162(a) for its TYE 5/31/12 the total TYE 5/31/12 claimed client expense deductions. RJC advances no argument on brief in support of its position that it is entitled for that taxable year to those claimed client expense deductions, choosing instead to "rely [only] on the evidence admitted".

We have found on the record before us the following facts relating to RJC's total TYE 5/31/12 claimed client expense deductions. During its TYE 5/31/12, RJC paid on behalf of certain of its clients certain obligations of those clients (1) for "Legal and Professional Fees" totaling $775 and (2) for "Taxes" totaling $1,750.46. At times not established by the record after RJC paid those client

**[*28]** expenses, RJC's clients whose respective expenses it had paid on their behalf reimbursed RJC for those expenses.

During RJC's TYE 5/31/12, Mr. Channels paid on behalf of certain of RJC's clients certain obligations of those clients for "Legal and Professional Fees" totaling $2,900.11. At times not established by the record after Mr. Channels paid those client expenses, RJC's clients whose respective expenses Mr. Channels had paid on their behalf reimbursed those expenses.[22]

Generally, where a taxpayer pays the obligations of another taxpayer, the payments of those obligations are not ordinary and necessary expenses incurred in carrying on the taxpayer's business under section 162(a). See, e.g., Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Deputy v. DuPont, 308 U.S. 488 (1940); Columbian Rope Co. v. Commissioner, 42 T.C. 800, 815 (1964).

On the record before us, we find that RJC has failed to carry its burden of establishing for its TYE 5/31/12 that it paid or incurred the total TYE 5/31/12 claimed client expense deductions in carrying on its trade or business. On that record, we further find that RJC has failed to carry its burden of establishing that it is entitled under section 162(a) for its TYE 5/31/12 to deduct those claimed client expenses.

---

[22]See supra note 5.

**[*29]**   <u>RJC's Claimed $325,000 Bogard Lawsuit Deduction</u>

We address next whether RJC is entitled to deduct under section 162(a) for its TYE 5/31/13 $325,000 that it claimed as a contingent liability with respect to the Bogard lawsuit.

In support of its position that it is entitled to the claimed $325,000 Bogard lawsuit deduction, RJC relies on brief on certain alleged facts that we have not found because those alleged facts are not established by the record. We have found on the record before us the following facts relating to RJC's claimed $325,000 Bogard lawsuit deduction. On December 31, 2012, Ms. Bogard commenced the Bogard lawsuit against various defendants, including C&B and Mr. Channels, both in his individual capacity and as an executive of C&B. RJC was not named as a defendant in the Bogard lawsuit.

RJC compounds its failure to rely on facts established by the record by relying on brief on "the U.S. Securities and Exchange Commission Rules", instead of applicable tax law, to support its position that it is entitled to the claimed $325,000 Bogard lawsuit deduction. We find RJC's position that it is entitled to the claimed $325,000 Bogard lawsuit deduction and the contentions on brief in support of that position to be groundless, if not frivolous.

[*30] On the record before us, we find that RJC has failed to carry its burden of establishing that it would have any liability with respect to the Bogard lawsuit. On that record, we further find that RJC, which was on the accrual method of accounting, has failed to carry its burden of establishing for its TYE 5/31/13 (1) that all the events occurred that establish the fact of its liability with respect to the Bogard lawsuit, (2) that the amount of any such liability could have been determined with reasonable accuracy, and (3) that economic performance occurred with respect to the liability. See sec. 1.461-1(a)(2), Income Tax Regs. On the record before us, we find that RJC has failed to carry its burden of establishing that it is entitled to deduct under section 162(a) for its TYE 5/31/13 $325,000 with respect to the Bogard lawsuit.

### RJC's TYE 5/31/12 Claimed Miscellaneous Deductions at Issue and TYE 5/31/13 Claimed Miscellaneous Deductions at Issue

We turn now to whether RJC is entitled under section 162(a) or any other section for its TYE 5/31/12 and its TYE 5/31/13 to the respective TYE 5/31/12 claimed miscellaneous deductions at issue and TYE 5/31/13 claimed miscellaneous deductions at issue.[23] As was true with respect to its total TYE 5/31/12

---

[23]There appear to be certain discrepancies between the respective amounts of certain of RJC's TYE 5/31/12 claimed miscellaneous deductions at issue and its TYE 5/31/13 claimed miscellaneous deductions at issue that respondent claims on

(continued...)

**[*31]** claimed client expense deductions, RJC advances no argument on brief in support of its position that it is entitled for its TYE 5/31/12 and its TYE 5/31/13 to the respective TYE 5/31/12 claimed miscellaneous deductions at issue and the TYE 5/31/13 claimed miscellaneous deductions at issue, choosing instead to "rely [only] on the evidence admitted".

On the record before us, we find that RJC has failed to carry its burden of establishing for its TYE 5/31/12 and its TYE 5/31/13 that it paid or incurred the respective TYE 5/31/12 deductions at issue claimed for certain miscellaneous expenses and TYE 5/31/13 deductions at issue claimed for certain miscellaneous expenses in carrying on its trade or business. On that record, we further find that RJC has failed to carry its burden of establishing that it is entitled under section 162(a) or any other section for its TYE 5/31/12 and its TYE 5/31/13 to deduct those respective claimed expenses.

### Section 6662(a)

The parties agree that RJC would be liable for each of its TYE 5/31/12 and its TYE 5/31/13 for the accuracy-related penalty under section 6662(a) in the

---

[23](...continued)
brief and the respective amounts of those certain deductions that RJC claimed in its TYE 5/31/12 return and its TYE 5/31/13 return, respectively. We expect the parties to reconcile any such discrepancies as part of the respective computations under Rule 155.

[*32] event there is a deficiency for either of those years. In the light of RJC's concessions and our holdings herein with respect to the issues presented with respect to RJC, we conclude that there will be a deficiency for each of its TYE 5/31/12 and its TYE 5/31/13. Consequently, pursuant to the stipulations of the parties, RJC will be liable for each of those taxable years for the accuracy-related penalty determined under section 6662(a).[24]

C&C

### C&C's 2012 Claimed Client Expense Deductions

We consider now whether C&C is entitled to deduct under section 162(a) for its taxable year 2012 C&C's claimed client expense deductions. As was true of RJC, C&C advances no argument on brief in support of its position that it is entitled for its taxable year 2012 to deduct those client expenses, choosing instead to "rely [only] on the evidence admitted".

We have found on the record before us the following facts relating to C&C's 2012 claimed client expense deductions. During 2012, C&C paid on behalf of certain of its clients certain obligations of those clients for "Clients' Obligations" totaling $3,138.64. At times not established by the record after C&C

---

[24]The respective amounts of the penalties under sec. 6662(a) for which RJC will be liable for its TYE 5/31/12 and its TYE 5/31/13 will be determined as part of the Rule 155 computations.

**[*33]** paid those client expenses, C&C's clients whose respective expenses it had paid on their behalf reimbursed C&C for those expenses.

During 2012, Ms. Gyor paid on behalf of certain of C&C's clients certain obligations of those clients for "Clients' Obligations" totaling $737. At times not established by the record after Ms. Gyor paid those client expenses, C&C's clients whose respective expenses Ms. Gyor had paid on their behalf reimbursed those expenses.[25]

As discussed above as part of our consideration of RJC's total TYE 5/31/12 claimed client expense deductions, where a taxpayer pays the obligations of another taxpayer the payments of those obligations generally are not ordinary and necessary expenses incurred in carrying on the taxpayer's business under section 162(a). See, e.g., Interstate Transit Lines v. Commissioner, 319 U.S. at 593; Deputy v. DuPont, 308 U.S. 488; Columbian Rope Co. v. Commissioner, 42 T.C. at 815.

---

[25]See supra note 12.

C&C claimed in its 2012 return deductions for not only the 2012 client expenses paid by C&C and the 2012 client expenses paid by Ms. Gyor, which totaled $3,875.64, but also the $22 paid by C&C to Ms. Gyor, or the 2012 claimed client expense deductions of $3,898, rounded to the nearest dollar. See supra note 13.

**[\*34]** On the record before us, we find that C&C has failed to carry its burden of establishing for its taxable year 2012 that it paid or incurred C&C's 2012 claimed client expense deductions in carrying on its trade or business.  On that record, we further find that C&C has failed to carry its burden of establishing that it is entitled under section 162(a) for its taxable year 2012 to deduct those claimed client expenses.

### C&C's 2012 Claimed Miscellaneous Deductions at Issue

We turn next to whether C&C is entitled under section 162(a) or any other section for its taxable year 2012 to the 2012 claimed miscellaneous deductions at issue.  As was true with respect to certain other deduction issues presented with respect to RJC and C&C, C&C advances no argument on brief  in support of its position that it is entitled for its taxable year 2012 to the 2012 claimed miscellaneous deductions at issue, choosing instead to "rely [only] on the evidence admitted".

On the record before us, we find that C&C has failed to carry its burden of establishing for its taxable year 2012 that it paid or incurred the 2012 deductions at issue claimed for certain miscellaneous expenses in carrying on its trade or business.  On that record, we further find that C&C has failed to carry its burden

**[*35]** of establishing it is entitled under section 162(a) or any other section for its taxable year 2012 to deduct those claimed expenses.

Section 6662(a)

The parties agree that C&C would be liable for its taxable year 2012 for the accuracy-related penalty under section 6662(a) in the event there is a deficiency for that year. In the light of C&C's concessions and our holdings herein with respect to the issues presented with respect to C&C, we conclude that there will be a deficiency for C&C's taxable year 2012. Consequently, pursuant to the stipulations of the parties, C&C will be liable for that taxable year for the accuracy-related penalty determined under section 6662(a).[26]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

Decisions will be entered

under Rule 155.

---

[26]The amount of the penalty under sec. 6662(a) for which C&C will be liable for its taxable year 2012 will be determined as part of the Rule 155 computations.